IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DARRYL WINSTON,

           Plaintiff,

v.

360 MORTGAGE GROUP, LLC,

           Defendant.

1:17-cv-1186-WSD

## OPINION AND ORDER

This matter is before the Court on Defendant 350 Mortgage Group, LLC's ("Defendant" or "360 Mortgage") Motion to Dismiss [4] ("Motion") Plaintiff Darryl Winston's ("Plaintiff" or "Winston") Complaint [1.1]. Plaintiff failed to respond to Defendant's Motion, and it is deemed unopposed. See LR 7.1B, NDGa. Also before the Court is Plaintiff's "Ex Parte Verified Petition for Temporary Restraining Order" [2] ("Motion for TRO").

**I.    BACKGROUND**

On December 17, 2014, Plaintiff obtained a loan in the amount of $369,000 from Defendant. (Compl. at 2). Repayment of the loan was secured by a deed ("Security Deed") to real property located at 1356 Churchill Way, Marietta, Georgia (the "Property"). (Id.). Plaintiff executed the Security Deed in favor of

Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Defendant and Defendant's successors and assigns. (Id.). Under the terms of the Security Deed, Plaintiff "grant[ed] and convey[ed] to MERS . . . and the successors and assigns of MERS with power of sale, [the Property]." (Security Deed, Cobb County Deed Book 15208, Page 1521-1540, at 2).[1]

In June 2015, Plaintiff "became delinquent in his . . . monthly mortgage payments" and sought "loss mitigation assistance." (Pet. for TRO [2] at 3).

On August 25, 2015, MERS assigned the Security Deed to Defendant. (Compl. at 3; see also Cobb County Deed Book 15275, Page 5919).

On March 3, 2017, Defendant "advertised the notice of sale under power of Plaintiff's [P]roperty on April 4, 2017, as a result of Plaintiff's alleged default on the loan secured by the [P]roperty." (Id. at 3). Plaintiff claims that the "notice did not identify who was the holder of the Security Deed and identified [Defendant] as the loan servicer." (Id.). Plaintiff asserts that "Defendant continues to hold itself

---

[1] See https://research.cobbsuperiorcourtclerk.com/Results. The Security Deed and the Assignment were filed and recorded by the Clerk of Court for the Superior Court of Cobb County. These documents are a matter of public record and the Court may consider them. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 355 (2007) (on a motion to dismiss, court must consider the complaint and matters of which it may take judicial notice); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1276-1278 (11th Cir. 1999) (court may take judicial notice of official public records and may base its decision on a motion to dismiss on the information in those records).

out as the holder of the note and the security deed while claiming to be the servicer of the loan. . . . Defendant cannot show they are a real party of [sic] interest to foreclose or enforce the negotiable instrument as they are the servicer." (Id. at 4).

On March 14, 2017, Plaintiff, proceeding *pro se*, filed in the Superior Court of Cobb County, Georgia, his Complaint, asserting claims for fraudulent conversion (Count I), mortgage servicing fraud (Count II), "declaratory judgment (credit default swap)" (Count III), "unfair and/or deceptive business practices" (Count IV), "fraud and/or attempted fraud" (Count V), and intentional infliction of emotional distress (Count VI).

On March 31, 2017, Plaintiff filed his Motion for TRO, seeking to enjoin the April 4, 2017, foreclosure sale.

On April 3, 2017, Defendant removed the Cobb County Action to this Court on the basis of diversity of citizenship. (Notice of Removal [1]).[2]

---

[2] Defendant also asserts that the Court has federal question jurisdiction because Plaintiff, in his Complaint, references the Truth in Lending Act, Real Estate Settlement Procedures Act, and the Fair Debt Collection Practices Act. Because it is clear that the Court has subject matter jurisdiction based on diversity of citizenship, the Court need not determine whether Plaintiff's Complaint raises issues of federal law sufficient to support federal question jurisdiction.

On August 7, 2017, Defendant moved to dismiss Plaintiff's Complaint for failure to state a claim.[3] Plaintiff did not respond to Defendant's Motion, and it is deemed unopposed.

## II. DISCUSSION

### A. Legal Standard

Dismissal of a complaint, pursuant to Rule 12(b)(6), is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true and considers the allegations in the complaint in the light most favorable to the plaintiff. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007); see also Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). The Court is not required to accept a plaintiff's legal conclusions as true. See Sinaltrainal v. Coca-Cola Co., 578 F.3d

---

[3] On April 3, 2017, Plaintiff, represented by counsel, filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. In re Winston, No. 17-56232 (Bankr. N.D. Ga. Apr. 3, 2017). On August 18, 2017, the Bankruptcy Court entered an order lifting the automatic bankruptcy stay "for the limited purpose of permitting the parties to continue the litigation pending in the District Court for the Northern District of Georgia with the case number 1:17-cv-01186-wsd . . . solely to permit the District Court to reach a decision in the pending litigation . . . ." (Id. at Doc. 40).

4

1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), abrogated on other grounds by Mohamad v. Palestinian Auth., — U.S. —, 132 S. Ct. 1702 (2012). The Court also will not "accept as true a legal conclusion couched as a factual allegation." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint, ultimately, is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

To state a plausible claim for relief, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557); see also Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 680 (11th Cir. 2014) (noting that Conley's "no set of facts" standard has been overruled by Twombly, and a complaint must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."). "A complaint is insufficient if it 'tenders naked assertions devoid of

5

further factual enhancement.'" Tropic Ocean Airways, Inc. v. Floyd, 598 F. App'x 608, 609 (11th Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004); see also White v. Bank of America, NA, 697 F. App'x 1015, 1018 (11th Cir. 2014) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)).

Complaints filed *pro se* are to be liberally construed and are "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted). Nevertheless, a *pro se* plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure. "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief." Grigsby v. Thomas, 506 F. Supp. 2d 26, 28 (D.D.C. 2007). "[A] district court does not have license to rewrite a deficient pleading." Osahar v. U.S. Postal Serv., 297 F. App'x 863, 864 (11th Cir. 2008).

B. <u>Analysis</u>[4]

1. <u>Defendant's Standing to Foreclose on the Property</u>

Plaintiff asserts that "Defendant continues to hold itself out as the holder of the note and the security deed while claiming to be the servicer of the loan. . . . Defendant cannot show they are a real party of [sic] interest to foreclose or enforce the negotiable instrument as they are the servicer." (Compl. at 4). It is undisputed that Plaintiff executed the Security Deed in favor of MERS, as nominee for Defendant and Defendant's successors and assigns. (<u>Id.</u>). Under the terms of the Security Deed, Plaintiff "grant[ed] and convey[ed] to MERS . . . and the successors and assigns of MERS with power of sale, [the Property]." (Security Deed at 2).

On August 25, 2015, MERS assigned the Security Deed to Defendant. (Compl. at 3; <u>see also</u> Assignment at 1). The Assignment states that MERS "does

---

[4] The Court notes that Plaintiff's Complaint is a variation of form complaints filed by persons seeking to avoid or delay foreclosure. <u>See, e.g.</u>, <u>Tonea v. Nationstar Mortg., LLC</u>, No. 1:14-cv-02397; <u>Porter v. Ocwen Loan Serv.</u>, No. 1:16-cv-4759; <u>Pessini v. Nationstar Mortg. LLC</u>, No. 1:17-cv-1058; <u>Samuel v. Nationstar Mortg.</u>, No. 1:15-cv-0350; <u>Pritchett v. Ocwen Loan Serv., LLC</u>, No. 2:16-cv-175, No. 2:17-cv-18. Plaintiff's Complaint is devoid of any meaningful facts and his vague, conclusory allegations are wholly insufficient to support a claim for relief. Plaintiff's Complaint is an impermissible "shotgun pleading" that fails to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure, and dismissal is warranted on this basis alone. <u>See</u> <u>Oshar</u>, 297 F. App'x at 864; <u>Maldonado v. Snead</u>, 168 F. App'x 373, 377 (11th Cir. 2006); <u>Magluta v. Samples</u>, 256 F.3d 1282, 1284 (11th Cir. 2001); <u>Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.</u>, 162 F.3d 1290, 1333 (11th Cir. 1998).

assign and set over, without recourse, to [Defendant] the described mortgage with all interest, all liens, any rights due or to become due thereon . . . ." (Assignment at 1). Defendant is thus entitled to exercise the power of sale in the Security Deed. See O.C.G.A. § 23-2-114.11.

To the extent Plaintiff argues that Defendant cannot foreclose on the Property and his mortgage is void because it was improperly securitized, this argument has been consistently rejected under Georgia law. See, e.g., Searcy v. EMC Mortg. Corp., No. 1:10-cv-0965, 2010 Dist. LEXIS 119975, at *2 (N.D. Ga. Sept. 30, 2010) ("While it may well be that Plaintiff's mortgage was pooled with other loans into a securitized trust that then issued bonds to investors, that fact would not have any effect on Plaintiff's rights and obligations with respect to the mortgage loan, and it certainly would not absolve Plaintiff from having to make loan payments or somehow shield Plaintiff's property from foreclosure."). Plaintiff has not, and cannot, assert a viable claim under any legal theory based on Defendant's alleged lack of authority to foreclose on the Property. Insofar as any of his claims, including his request for injunctive relief, are based on Defendant's alleged lack of authority to foreclose on the Property, these claims are required to be dismissed.

2. <u>Fraudulent Conversion (Count I)</u>

Plaintiff cannot state a claim for conversion because the property Defendant allegedly converted is Plaintiff's home, and under Georgia law, "[c]onversion does not apply to real property." <u>Chung v. JPMorgan Chase Bank, N.A.</u>, 976 F. Supp. 2d 1333, 1347 (N.D. Ga. 2013) (citing <u>Levenson v. Ward</u>, 668 S.E.2d 763 (Ga. Ct. App. 2008) ("An action for conversion and trover will not lie to recover real property.")). Plaintiff has not, and cannot, state a claim for fraudulent conversion based on Defendant's alleged conversion of the Property, and Plaintiff's fraudulent conversion claim is required to be dismissed.

To the extent Plaintiff's conversion claim is based on his argument that Defendant never "put forth any consideration in the alleged contract" and that Plaintiff was not loaned any money, so he does not owe a debt, could not have defaulted on his mortgage, and thus cannot be foreclosed upon, this "no money lent" or "vapor money" theory had been consistently rejected by this Court and other courts throughout the country. See, e.g., <u>McCrary v. Nationstar Mortg.</u>, No. 1:15-cv-1235, 2015 U.S. Dist. LEXIS 186099, at *12-13 (N.D. Ga. Nov. 25, 2015) ("So-called 'vapor money' claims are based on the notion that a borrower's repayment obligation is negated, because of the allegation that the lending bank did not fund the loan through actual deposits of legal tender but rather 'created' the

appearance of a loan through bookkeeping entries. Courts have uniformly rejected those and similar nonsensical arguments.") (collecting cases); Yeboah v. Bank of N.Y. Mellon, No. 1:12-CV-02139, 2012 WL4759246, at *5 (N.D. Ga. Aug. 30, 2012) (explaining that plaintiff's allegation that he, not the original lender, "'was the depositor' . . . is commonly known as the 'vapor money' theory or a 'no money lent' claim," and "[s]uch claims fail as a matter of law") (collecting cases), adopted by 2012 WL 4759242 (N.D. Ga. Oct. 5, 2012). Plaintiff's conversion claim is dismissed for this additional reason.

### 3. Declaratory Judgment (Credit Default Swap) (Count III)

Plaintiff alleges that "[t]he Loan was insured by a credit default swap agreement (the 'CDSA'), which resulted in payout of the Loan's outstanding balance upon Plaintiff's default." (Compl. at 16). He further alleges that he is entitled to a declaratory judgment "that Defendant is not entitled to the self help remedy of nonjudicial foreclosure" because "the true owner of the Loan was made whole by the CDSA and consequently, suffered no loss or harm by Plaintiff's purported default." (Id. at 17). Plaintiff fails to provide any factual or legal basis for this claim, and "courts have uniformly rejected claims that securitization, insurance, or credit default swaps negate a borrower's obligations or a creditor's ability to foreclose." Williams v. Ocwen Loan Serv., LLC, No. 1:14-CV-3531,

2015 U.S. Dist. LEXIS 180550, at *26-27 (N.D. Ga. July 31, 2015) (collecting cases), adopted by 2015 U.S. Dist. LEXIS 180551 (N.D. Ga. Aug. 26, 2015).

The Court notes further that Plaintiff already defaulted on his loan obligations and it is undisputed that Defendant already initiated foreclosure proceedings. No uncertainty exists about any future action by Plaintiff. A declaratory judgment is unavailable because "all material rights have accrued based on past events and what Plaintiff seeks is an advisory opinion on the validity of the future act of another party." See Milani v. One West Bank FSB, 491 F. App'x 977, 979 (11th Cir. 2012) (citing Logan Paving Co. v. Peoples Bank & Trust, 395 S.E.2d 287, 288 (Ga. Ct. App. 1990)); id. ("[T]o pursue properly a declaratory judgment under Georgia law 'a party must establish that a declaratory judgment is necessary to relieve himself of the risk of taking some future action that, without direction, would jeopardize his interests.'") (quoting Porter v. Houghton, 542 S.E.2d 491, 492 (Ga. 2001)). Plaintiff's claim for declaratory relief is required to be dismissed.

    4.  Unfair and/or Deceptive Business Practices (Count IV)

Plaintiff alleges that "Defendant engaged in unfair and/or deceptive business practices under the Georgia Fair Business Practices Act of 1975 by charging the Plaintiff False Servicer Fees." (Compl. at 17).

The Georgia Fair Business Practices Act ("FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." O.C.G.A. § 10–1–393(a). The FBPA does not apply to transactions that occur in regulated areas of activity, such as loan lending and servicing. See O.C.G.A. § 10-1-396(1) (FBPA does not apply to "actions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States"); James v. Bank of America, N.A., 772 S.E.2d 812, 816 (Ga. Ct. App. 2015) (holding that "because residential mortgage transactions are regulated by both state and federal law, the FBPA does not apply"); Stewart v. Suntrust Mortg., Inc., 770 S.E.2d 892, 897–98 (Ga. Ct. App. 2015) (finding that plaintiff's FBPA claim fails in part because the mortgage industry is regulated); Sheppard v. Bank of America, NA, 542 F. App'x 789, 793 (11th Cir. 2013) ("As construed by Georgia courts, it appears the FBPA does not apply to transactions that occur in regulated areas of activity, such as loan lending and servicing"). Plaintiff has not, and cannot, state a claim for violation of the FBPA based on Defendant's servicing of his mortgage, and Plaintiff's FBPA claim is required to be dismissed.[5, 6]

---

[5] Even if Plaintiff could assert a claim for violation of the FBPA based on the servicing of his mortgage, Plaintiff fails to assert that he gave Defendant the required 30-day notice before filing his Complaint. See O.C.G.A. § 10-1-399(b);

### 5. Fraud and/or Attempted Fraud (Count V)

Plaintiff alleges that Defendant "misrepresented the true balance of the Loan and their true status as servicer and/or creditor of the Loan, with knowledge or reckless disregard of the statements' falsity, in each of the Monthly Statements, Notice of Default, Payoff Letter and Notice(s) of Foreclosure." (Compl. at 18). Plaintiff claims that he "relied on these representations by continuing to deal with Defendant as their [sic] lender, including directing their [sic] modification application(s) [sic]," which "caused damages to Plaintiff in the form of pecuniary loss and mental anguish." (Id.).

---

Walker v. JPMorgan Chase Bank, N.A., 987 F. Supp. 2d 1348, 1354 (N.D. Ga. 2013); Steed v. Fed. Nat. Mortg. Corp., 689 S.E.2d 843, 849 (Ga. Ct. App. 2009); Brown Realty Assoc., Inc. v. Thomas, 389 S.E.2d 505, 510 (Ga. Ct. App. 1989). Plaintiff's FBPA claim is required to be dismissed for this additional reason.

[6] In connection with his FBPA claim, Plaintiff asserts that "Defendant has violated the FDCPA, U.S.C. § 1692f [sic] because it has engaged in conduct of which the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the alleged attempt to collect on this debt and foreclosure of Plaintiff's property." (Compl. at 17). The FDCPA only applies to "debt collectors," and Plaintiff fails to allege any facts to support that Defendant is a "debt collector" for purposes of the FDCPA. See 15 U.S.C. § 1692a(6) (defining "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"); Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1313 (11th Cir. 2015) (plaintiff must plead factual content that allows the court to draw a reasonable inference that defendant is a "debt collector" under the FDCPA). Plaintiff fails to state a claim for violation of the FDCPA.

13

In Georgia, a plaintiff alleging fraud must show: "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." Baxter v. Fairfield Fin. Servs., 704 S.E.2d 423, 429 (Ga. Ct. App. 2010).

Rule 9(b) of the Federal Rules of Civil Procedure further requires plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Eleventh Circuit has consistently held:

> To comply with Rule 9(b), a complaint must set forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Thomas v. Pentagon Federal Credit Union, 393 F. App'x 635, 638 (11th Cir. 2010) (mortgagor failed to allege facts with sufficient particularity to state fraud claim against mortgagee where he did not identify any specific statements made by mortgagee and failed to identify time and place of an omission, person responsible for making an omission, and what mortgagee obtained as a consequence of fraud).

Plaintiff's conclusory allegations are not sufficient to support a fraud claim. Plaintiff fails to describe with sufficient particularity the allegedly false statement made, the manner in which it misled Plaintiff, or what Defendant gained by

allegedly making the false statement. Plaintiff further fails to allege that he relied upon a false representation, or that such reliance was justifiable. Plaintiff alleges merely that Defendants "misrepresented the true balance of the Loan and their true status as servicer and/or creditor of the Loan," that he relied on these misrepresentations "by continuing to deal with Defendant" and sending Defendant a modification application, and that Defendant caused him "pecuniary loss and mental anguish." (Compl. at 18).[7] Plaintiff has not pled the elements of fraud with the specificity required under Rule 9 of the Federal Rules of Civil Procedure and he otherwise fails to state a claim for fraud under Georgia law. See Baxter, 704 S.E.2d at 429; Thomas, 393 F. App'x at 638; Albert, 2011 WL 1085148 at *2. Plaintiff's fraud claim is required to be dismissed.

6. Mortgage Servicing Fraud (Count II)

Plaintiff fails to allege any facts about Defendant's alleged misconduct in servicing Plaintiff's loan. Rather, Plaintiff's "mortgage servicing fraud" claim consists of nineteen (19) paragraphs of illogical, convoluted allegations about the mortgage loan servicing industry in general. To the extent Plaintiff "asks this court

---

[7] Plaintiff fails also to show that he suffered damages because of Defendant's alleged fraud, particularly because it appears Plaintiff had been living in the Property without successfully making any mortgage payments since June 2015. (See Pet. For TRO [3.3] at ¶ 1; In re Winston, 17-56232-WLB, Doc. 39.1 (Bankr. N.D. Ga. Aug. 8, 2017)).

15

for discovery" to support his mortgage servicing fraud claim (Compl. at 17, 20), the Eleventh Circuit has observed that the "clear intent [of Rule 9] is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed," Friedlander v. Nims, 755 F.2d 810, 813 n.3 (11th Cir. 1985). Plaintiff's conclusory assertions do not satisfy the pleading requirements of Rule 9 and Plaintiff otherwise fails to state a claim for fraud under Georgia law. See Baxter, 704 S.E.2d at 429; Thomas, 393 F. App'x at 638; Albert, 2011 WL 1085148 at *2. Plaintiff's mortgage servicing fraud claim is required to be dismissed.[8]

---

[8] In his Complaint, Plaintiff also makes passing references to the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA"). (See Compl. at 3). To the extent Plaintiff claims that Defendant violated RESPA by failing to respond to his February 10, 2017, Qualified Written Request ("QWR") (see Compl. at 3), Plaintiff filed his Complaint on March 14, 2017—at most, 21 business days after he *mailed* his QWR—and thus his RESPA claim is premature. See Compl. at 3; 12 U.S.C. § 2605(e)(2) (requiring servicer to respond "[n]ot later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the *receipt* from any borrower of any [QWR]").

Plaintiff further cannot state a claim for rescission under TILA because the Property at issue is Plaintiff's home, and the right of rescission does not apply to residential mortgage transactions. See 15 U.S.C. § 1635(e)(1) (right of recision does not apply to "residential mortgage transactions"); 15 U.S.C. §1602(x) ("residential mortgage transaction" means a transaction in which a mortgage [is obtained] against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"). To the extent Plaintiff claims that Defendant violated TILA by failing to respond to his request for "disclosure" and "validation of the debt," even assuming his letter constitutes a valid request under TILA, Plaintiff fails to show that he suffered actual damages resulting from Defendant's

### 7. Intentional Infliction of Emotional Distress (Count VI)

Plaintiff alleges that "Defendant's acts and/or omissions were done intentionally and/or with gross indifference to Plaintiff's rights. Plaintiff's emotional distress includes, but is not limited to, extreme humiliation, anxiety and loss of sleep. As a result of the Defendant's conduct, fraud and lack of disclosure, Plaintiff has suffered compensatory, general and special damages." (Compl. at 18).

Under Georgia law,

> the burden which the plaintiff must meet in order to prevail [on a claim for intentional infliction of emotional distress] is a stringent one. To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

Steed v. Fed. Nat'l Mortg. Corp., 689 S.E.2d 843, 851-852 (Ga. Ct. App. 2009) (quoting Frank v. Fleet Fin. Inc. of Ga., 518 S.E.2d 717, 720 (Ga. Ct. App. 1999)).

---

alleged failure to respond. See Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001) ("[D]etrimental reliance is an element of a TILA claim for actual damages . . . plaintiff must present evidence to establish a causal link between the financing institution's noncompliance and his damages."); see also Che v. Aurora Loan Serv., 847 F. Supp. 2d 1205, 1209 (C.D. Cal. 2012) (dismissing claim for failure to plead actual damages resulting from alleged TILA violation because damages resulted from plaintiff "allow[ing] her loan to go into default").

The core of Plaintiff's claim is that Defendant "attempt[ed] to take Plaintiff's real property through foreclosure when they have no legal right to do so." (Compl. at 18). This is simply not the kind of action that rises to the level of extreme, outrageous, atrocious or intolerable conduct required to support a claim for intentional infliction of emotional distress. See, e.g., Frank, 518 S.E.2d at 720 (breach of contract to re-sell property to homeowners following foreclosure sale and institution of dispossessory proceedings not the kind of egregious conduct necessary to support intentional infliction of emotional distress); Ingram v. JIK Realty Co., 404 S.E.2d 802 (Ga. Ct. App. 1991) (affirming grant of summary judgment on intentional infliction claim where defendant's conduct consisted of wrongfully foreclosing on plaintiff's property); Thomas v. Ronald A. Edwards Constr. Co., 293 S.E.2d 383 (1982) (filing a dispossessory warrant does not constitute the kind of egregious conduct necessary to sustain a claim for intentional infliction of emotional distress). Plaintiff fails to state a claim for infliction of emotional distress and this claim is required to be dismissed.

        8.      <u>Petition for Temporary Restraining Order and Injunctive Relief</u>

A claim for preliminary injunctive relief requires a showing of "a substantial likelihood of success on the merits of the underlying case," <u>Grizzle v. Kemp</u>, 634 F.3d 1314, 1320 (11th Cir. 2011), while a permanent injunction

requires actual success on the merits, United States v. Endotec, Inc., 563 F.3d 1187, 1194 (11th Cir. 2009). Because Plaintiff's claims have been dismissed on the merits, he cannot demonstrate likely or actual success on the merits, and his petition for injunctive relief is required to be denied.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant 350 Mortgage Group, LLC's Motion to Dismiss [4] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Darryl Winston's Petition for TRO [2] is **DENIED**.

**SO ORDERED** this 2nd day of October, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE